AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of California

FILED
JUL 11 2019
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                              DEPUTY

In the Matter of the Search of  )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )    Case No.   **19MJ2896**
Black SENWA S471 with ESN: 352436080941966 )
                                )
                                )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the _____Southern_____ District of _____California_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 952, 960, 963 | Importation of a Controlled Substance; Conspiracy to commit same |

The application is based on these facts:

See attached Affidavit of Special Agent Paul Mello

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Special Agent Paul Mello, HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 7/11/19

_____
*Judge's signature*

City and state: San Diego, CA                    Hon. William V. Gallo, U.S. Magistrate Judge
                                                  *Printed name and title*

# AFFIDAVIT

I, Special Agent Paul Mello, Homeland Security Investigations (HSI), being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for a warrant to search one Black SENWA S471 with ESN: 352436080941966 cellular phone seized from Saul LEAL, as described in Attachment A (collectively, the "**Target Device**"), and seize evidence of crimes, specifically violations of 21 U.S.C. §§ 952, 960, and 963.

2. The requested warrant relates to the investigation and prosecution of Saul LEAL ("Defendant"). The Defendant is charged with the importation of approximately 30.58 kilograms (67.41 pounds) of methamphetamine and 5.6 kilograms (12.34 pounds) of cocaine in the Southern District of California (Case No. 19-CR-01697-BAS). The **Target Device** was seized from LEAL on April 16, 2019, at the time of his arrest at the San Ysidro Port of Entry. The **Target Device** is currently in an evidence vault located at 9495 Customhouse Plaza, San Diego, CA 92154.

3. Based on the information below, there is probable cause to believe that a search of the **Target Device** will produce evidence of the aforementioned crimes, as set forth in greater detail in Attachment B.

4. The information contained in this affidavit is based upon my experience, training, and consultation with other law enforcement agents. Because this affidavit is made for the limited purpose of obtaining search warrants for the **Target Device**, it does not contain all of the information known by me or other federal agents regarding this investigation.

5. Based upon my training, experience, and the information set forth in this affidavit, I believe the following items will be found in the **Target Device**:

   a. Telephone numbers or identities assigned to the device, including usernames and passwords and electronic mail addresses;

b. Call history information, including Internet Protocol (IP) addresses accessed by the device or accessing the device;
c. Stored photographs, videos and text messages;
d. Stored electronic mail, including attachments, and voice messages and other recordings;
e. Web-browsing history and any stored web pages;
f. Stored documents and other files;
g. Stored geo-location information; and,
h. Data stored in any application.

These items may constitute or may lead to evidence of drug trafficking in violation of Title 21, United States Code Sections 952, 960, and 963.

## TRAINING AND EXPERIENCE

6. I have been employed as a Special Agent with HSI since June 2018. I am currently assigned to the San Ysidro Contraband Smuggling Group 3, which investigates violations pertaining to the illegal possession, transportation, and distribution of controlled substances. I am also cross-designated by the Drug Enforcement Administration (DEA) to conduct narcotics investigations and to make arrests based on violations of Title 21 of the United States Code.

7. As part of my training to become a Special Agent, I completed a 27-week course regarding criminal investigations at the Federal Law Enforcement Training Center (FLETC) in Glynco, Georgia. I have attended and successfully completed the Criminal Investigator Training Program and HSI Special Agent Training at the Federal Law Enforcement Training Center in Brunswick, Georgia. I have also completed training at the U.S. Border Patrol Academy in Artesia, New Mexico.

8. During my tenure with HSI, I have participated in numerous investigations relating to narcotics smuggling, and I have also received specific training in the methods used by narcotics traffickers to import and distribute drugs, including training regarding the use of cellular phones and other electronic devices by narcotics traffickers to operate

large distribution networks.

9. Through my training, experience, and conversations with other law enforcement officers, I have become knowledgeable regarding the methods of narcotics traffickers and the language and patterns of narcotics abuse and trafficking. I am aware that it is common practice for narcotics smugglers to work in concert with other individuals by utilizing cellular phones to maintain communications with co-conspirators. Conspiracies involved in the smuggling and trafficking of narcotics generate many types of evidence, including, but not limited to, cellular phone-related evidence, such as text messages. With regard to drug importation cases, for example, load drivers smuggling controlled substances across the United States/Mexico border are often in contact with co-conspirators around the time of the crossing of the load vehicle for purposes of receiving instructions or updating the conspiracy on their status.

10. Based upon my training, experience, and consultations with other law enforcement officers, I submit the following:

    a. Drug traffickers will use cellular phones because they are mobile and permit ready access to phone calls and text, web, and voice messages.

    b. Drug traffickers will use cellular phones because they are able to actively monitor the progress of their illegal cargo while in transit.

    c. Drug traffickers and their accomplices will use cellular phones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations.

    d. Drug traffickers will use cellular phones to coordinate a drop off and/or pick up time for their illegal cargo.

    e. Drug traffickers will use cellular phones to notify or warn their accomplices of law enforcement activity, including the presence of law enforcement officers, as well as the operational status of checkpoints and border crossings.

    f. Drug traffickers will use cellular phones to communicate with persons who transport their narcotics and/or drug proceeds.

11. Additionally, based upon my training and experience, I know that cellular phones can and often do contain electronic evidence, such as emails, text messages, chat logs, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular phone. Specifically, searches of cellular phones often yield evidence:

   a. tending to indicate efforts to import methamphetamine, or some other federally controlled substance, from Mexico into the United States;

   b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States;

   c. tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States;

   d. tending to identify travel to or presence at locations involved in the importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States, such as stash houses, load houses, or delivery points;

   e. tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or

   f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

### FACTS SUPPORTING PROBABLE CAUSE

12. On April 16, 2019, at approximately 5:50 PM, Saul LEAL entered the U.S. from Mexico at the San Ysidro Port of Entry, San Ysidro, California. LEAL, a U.S Citizen, was the driver, registered owner, and sole occupant of a 2000 Nissan Xterra bearing California license 7FQB044. In primary inspection, LEAL told the Customs and Border Protection Officer (CBPO) that he was going to work in Otay Mesa, and that he purchased

4

1  the vehicle two months ago. LEAL explained that he was the only one that drives the
2  vehicle. The CBPO inspected the vehicle with a density reader, which showed an
3  abnormally high reading than normal. A Narcotics and Human Detection Dog alerted to
4  spare tire. LEAL and the vehicle were sent to secondary inspection. Subsequent inspection
5  of the vehicle resulted in the seizure of 55 packages, containing approximately 67.41
6  pounds (30.58 kilos), of methamphetamine and 5 packages, containing 12.34 pounds (5.6
7  kilos), of Cocaine were found concealed in the spare tire, front seats, and both quarter
8  panels. LEAL was placed under arrest and the **Target Device** was seized.

9       13.    LEAL was read his *Miranda* rights, and agreed to speak to agents without an
10 attorney present. According to LEAL, he recently replied to an advertisement on Facebook
11 soliciting people looking for work. LEAL stated that after sending the message he was
12 contacted by someone named "Tomas". LEAL stated Tomas brought him to meet someone
13 he called "Supervisor" and that they wanted him to bring candy and wallets with him into
14 the United States on his daily trips to work. LEAL stated in exchange for this service they
15 would give him a car, a cell phone and approximately 35 dollars per trip. LEAL stated he
16 was given the vehicle approximately 1-2 weeks ago. When agents confronted him with the
17 fact that he told CBPOs he has had the vehicle for two months he admitted to lying to them.
18 LEAL stated he lied to the CBPO's because he was scared and did not want them to think
19 he was doing something wrong.

20      14.    LEAL stated that he has brought bags of candy and sometimes beer with him
21 in the past to make extra money. LEAL was initially reluctant to give details about Tomas
22 and Supervisor but eventually stated that he suspected them of being involved in Narcotics
23 smuggling and admitted that Tomas offered to pay five thousand dollars if LEAL would
24 agree to smuggle money or people across the border, LEAL insisted that he refused the
25 offer. LEAL stated before being caught he had crossed with the vehicle about four times
26 and attempted to get the vehicle registered under his name, however the vehicle failed
27 smog.

28      15.    LEAL stated he wanted to get the vehicle registered under his name as soon

as possible so that he would not be questioned as much when he crossed the border. LEAL told agents after the car failed smog he dropped it off with Tomas who claimed to have fixed it. LEAL stated Tomas sent him the location on the phone he was instructed to use of where to meet with Tomas. LEAL stated that Tomas rode with him right up until the San Ysidro Port of Entry. Before getting out of the car Tomas told LEAL that next time he will not be with him, however there will be a GPS tracker in the car until Tomas and the Supervisor can trust him. LEAL told agents he suspected that the car was loaded with something illegal and even gave his credit card to his wife in case he was arrested.

16. Based upon my training, experience, and investigation in this case, I believe that LEAL was involved in an ongoing conspiracy to import methamphetamine and cocaine. Further, in part because Defendant admits to speaking with two suspected narcotics traffickers leading up to Defendants' arrest, there is probable cause to believe that information related to the narcotics trafficking activities of Defendant is stored in the memory of the **Target Device**.

17. Through my training, experience, and consultations with other law enforcement officers, I am aware that drug conspiracies frequently require planning to successfully evade detection by law enforcement, including planning and coordination in the days and weeks prior to a drug smuggling event. Additionally, co-conspirators are often initially unaware of a subject's arrest and will continue to attempt to communicate with a subject after their arrest to determine the whereabouts of the narcotics. Based on my training and experience, individuals such as the Defendant will also attempt to minimize the amount of time they were involved in their drug smuggling activities, and may be involved for weeks and months longer than they claim. Given those facts, I respectfully request permission to search the **Target Device** for data beginning on February 1, 2019, up to and including April 17, 2019.

## METHODOLOGY

18. It is not possible to determine, merely by knowing the cellular/mobile telephone's make, model and serial number, the nature and types of services to which the

device is subscribed and the nature of the data stored on the device. Cellular/mobile devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular/mobile service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular/mobile telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular/mobile telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

19. Following the issuance of these warrants, I will collect the **Target Device** and subject it to analysis. All forensic analysis of the data contained within the telephones and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of the warrant.

20. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

//

## CONCLUSION

21. Based on all of the facts and circumstances described above, there is probable cause to conclude that Defendant used the **Target Device** to facilitate violations of Title 21, United States Code, Section(s) 952, 960, and 963.

22. Because the **Target Device** was promptly seized during the investigation of the Defendants drug trafficking activities and have been securely stored, there is probable cause to believe that evidence of illegal activities committed by the Defendant continues to exist on the **Target Device**. As stated above, I believe that the appropriate date range for the searches is from February 1, 2019, up to and including April 17, 2019.

23. For the above reasons, I request that the Court issue a warrant authorizing law enforcement agents and/or other federal and state law enforcement officers to search the items described in Attachment A, and seize the items listed in Attachment B, using the methodology described above.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
Special Agent Paul Mello
Homeland Security Investigations

Subscribed and sworn to before me this ___11___ day of July, 2019.

_____
Hon. William V. Gallo
United States Magistrate Judge

8

## ATTACHMENT A

### PROPERTY TO BE SEARCHED

One Black SENWA S471 with ESN: 352436080941966 cellular phone seized from Saul LEAL

The Target Device is currently in an evidence vault located at 9495 Customhouse Plaza, San Diego, CA 92154.

## **ATTACHMENT B**

## ITEMS TO BE SEIZED

Authorization to search the cellular phones described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular phone for evidence described below. The seizure and search of the cellular phone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular phone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of February 1, 2019, up to and including April 17, 2019:

a. tending to indicate efforts to import methamphetamine, or some other federally controlled substance, from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the **Target Devices**; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

**which are evidence of violations of Title 21, United States Code, Sections 952, 960, and 963.**